Hal Glenn, Appellant, v. James F. Price, Appellee.

Gen. No. 9,657.

638

 Opinion filed May 26, 1949. Released for publication June 21, 1949.

STONE, STONE & HESS, of Bloomington, for appellant.

PRATT, HEFFERNAN & RAMSEYER and J. WILLIAM MEARA, all of Bloomington, for appellee.

MR. JUSTICE WHEAT delivered the opinion of the court.

This is an appeal from an order of the circuit court of McLean county dismissing an action for want of equity, on motion that the amended complaint did not state a cause of action.

The amended complaint alleged that on August 23, 1947, a written contract was entered into, whereby the defendant appellee, James F. Price, agreed to sell, and plaintiff appellant, Hal Glenn, agreed to buy certain real estate in McLean county, Illinois, for an agreed price of $16,500 of which $2,000 was paid upon the execution of the contract, the balance being payable November 1, 1947, at which time deed was to be delivered. Possession of the premises was to be given by March 1, 1948. It further alleged that plaintiff was unable to secure sufficient funds to complete the purchase, and that he, therefore, endeavored to interest other prospective purchasers in a sale from the defendant; that defendant became apprised of plaintiff's financial condition and the impossibility of performance on his part and both before and after the closing date "wrongfully obstructed, impeded, and hindered the plaintiff in his

efforts to re-sell the farm by preventing the plaintiff and the plaintiff's purchasers from access to the farm itself; that the land purchased and sold as above set out was on the first day of November, 1947, and prior and subsequent thereto, easily worth $16,500.00, the purchase price agreed upon; that the same could have been sold readily to any one of a number of prospective purchasers had the plaintiff been able to take such prospective purchasers on the land.'' The prayer asks that plaintiff be relieved from the penalty which defendant seeks to inflict, that is, forfeiture of the $2,000 down payments, and asks that defendant be ordered to pay to plaintiff that part of the down payment in excess of defendant's reasonable damages, which will not in any event exceed $500. An examination of the contract indicates that there is nothing therein determining the rights of the parties in the event of the default by either party. It does not contain any provision as to forfeiture of payments or cancellation of the contract upon breach by the vendee. It does recite, however, that ''time is of the essence of the contract.''

Plaintiff relies upon two theories: (1) defendant has a quasi-contractual duty, or a duty imposed by law, to surrender the benefit he has derived from plaintiff's part performance insofar as it exceeds defendant's actual damages; (2) prevention or hindrance of one party to a contract, of performance by the opposite party, so far excuses his failure to perform as to allow him to rescind and recover the down-payment.

As to plaintiff's first theory, the following appears in Williston on Contracts, sec. 1473:

''Few questions in the law have given rise to more discussion and difference of opinion than that concerning the right of one who has materially broken his contract without legal excuse, to recover for such benefit as he may have conferred on the other party by part performance on an indivisible contract or by the perform-

ance of an indivisible fraction of a divisible portion of a contract. A satisfactory solution is not easy, for two fundamental legal policies seem here to come in conflict. On the one hand, it seems a violation of the terms of a contract to allow a plaintiff in default to recover— to allow a party to stop when he pleases and sell his part performance at a value fixed by the jury, to the defendant, who has agreed only to pay for full performance. On the other hand, to deny recovery often gives the defendant more than fair compensation for the injury he has sustained and imposes a forfeiture on the plaintiff. The mores of the time and place will often determine which policy will be followed. But the second of these opposing policies has steadily increased in favor in recent years. Except where the obliquity of the defective performance is of a sort that indicates moral obliquity, and where, therefore the courts feel that the one who is in default may properly be penalized, the tendency is to grant him restitution if a substantial net benefit has accrued to the defendant by partial performance.''

The Restatement of the Law of Contracts, section 357, provides:

''(d) Even if the plaintiff's non-performance is a breach of his contractual duty for which the defendant has a right to damages, there are many cases in which it is not just to permit the defendant to retain the whole benefit of the plaintiff's part performance without paying anything in return. If the benefit received by the defendant is no more than his harm, he owes nothing to the plaintiff. But if the benefit received is more than the amount of his harm, to let him retain the excess would not only be giving him something for nothing, it would also be making the plaintiff suffer a penalty for his wrong in excess of the compensatory damages that are held to be a fully adequate remedy in actions for wrongful breach.

"(e) One who is sued for damages is required to pay no more than just compensation, making due allowance for benefits received by the injured party, even though his breach is wilful and deliberate; but one who sues for restitution of value that he has given in part performance can recover none of it if his breach is wilful and deliberate, except to the extent indicated in Clause (b). A breach may be committed knowingly and yet not be wilful and deliberate. Such is the case if it is the result of mere negligence or error of judgment, or mistake of fact or law, or is due to hardship, insolvency, or circumstances that tend appreciably toward moral justification."

Although this precise question does not appear to have been presented to any Illinois reviewing court heretofore, the tenor of a majority of the opinions in somewhat similar cases seems to be that plaintiff cannot recover. Although no specific reason can be given for this, it would appear that society generally will benefit, and administration of justice will be facilitated by a rule of law which will affirmatively encourage contracting parties to make every effort to carry out their contractual obligations. In this view the overcompensation allowed the defendant probably must be considered an added incentive to perform rather than a penalty or forfeiture for not performing. In addition to this, any other view would subject to litigation a party who was ready and willing to perform by one who was in default.

Numerous Illinois decisions hold that in order to justify abandonment of a contract and obtain the remedy arising therefrom, the purchaser must show a total failure to perform by the opposite party so that the object of the contract has been defeated or rendered unobtainable. It further appears that the purchaser must put the vendor in default by tender of performance on his part before he can maintain his action. (*Doggett v. Brown*, 28 Ill. 493; *Selby v. Hutchinson*, 4

Gilm. 319; *Weintz v. Hafner,* 78 Ill. 27). To the same effect are *Davison v. Hill,* 1 Ill. App. 70 and *Eames v. Der Germania Turn Verein,* 8 Ill. App. 663, where it is stated that "the law is well settled and clear" that the purchaser in order to rescind and recover payments must show an entire breach by the seller and the court finds the rule inflexible that where the seller has not incapacitated himself by conveying to another, the purchaser must put the seller in default by tendering performance and making demand for deed. In *Wheeler v. Mather,* 56 Ill. 241, and *Bryson v. Crawford,* 68 Ill. 362, the court lists the following as the only instances in which the purchaser is entitled to recover back payments made on the purchase price: First: where the contract has been rescinded by the mutual consent and agreement of the parties; second, where the vendor is incapable or unwilling to perform the contract on his part; third, where the vendor has been guilty of fraud in making the contract. In *Baston v. Clifford,* 68 Ill. 67, there is added: Fourth, where by the terms of the contract it is left in the purchaser's power to rescind it by any act on his part, and he does it; fifth, where neither party is ready to complete the contract at the stipulated time but each is in default. In addition to the foregoing, the case of *Dean v. Lowey,* 50 Ill. App. 254, is pertinent. The court gave no sympathy whatever to a purchaser who, when he found himself unable to obtain money as he had expected, attempted to recover the down payment made and pleaded that his inability to perform was not wilful. The court said: "It is immaterial whether appellant's failure to perform . . . was owing to misfortune or wilfulness; whether he made a bad bargain which he does not care to carry out, or undertook that which his means did not enable him to perform . . . . An undertaking to do a thing which is in itself possible, will render the promissor liable for a failure although it was beyond his power to accomplish, for it

was his folly to run the risk of being able to do that which for *him* has proven to be impossible." By way of conclusion, the court observes that the rule announced "tends to promote justice by regarding the sanctity of contracts."

In the case of *People ex rel. Nelson v. Union Bank of Chicago,* 304 Ill. App. 254, it was held that where a purchaser informed vendor that she did not intend to make any monthly payments as required by the contract, and she in fact made no payments other than the initial down payment, the vendor had the right to treat the contract as terminated and retain the payments in accordance with the agreement. In *Mourant v. Pullman Trust & Savings Bank,* 314 Ill. App. 567, it was held that where a purchaser, after paying a part of the price pursuant to contract, makes inexcusable default, and vendor, being without fault, exercises the right given by the contract of declaring it terminated, the purchaser is not entitled to recover back the money paid in part performance, even though the contract made no provision for retention thereof by the vendor upon the default of purchaser. In *Marlowe v. Chicago Title & Trust Co.,* 323 Ill. App. 278, it was held that earnest money deposited as part payment of the purchase price under a contract cannot be recovered on forfeiture of the contract through purchaser's default.

It must be noted, however, that none of the foregoing cases is decisive as to the instant case, and that the propositions of law announced in them are broad and general, because the contracts in question either made specific provision for forfeiture of payments on vendee's default (such as *Davison v. Hill, supra; Eames v. Der Germania Turn Verein, supra; Doggett v. Brown, supra; Dean v. Lowey, supra*), or for forfeiture of the contract (*Mourant v. Pullman Trust & Savings Bank, supra; Wheeler v. Mather, supra; Bryson v. Crawford, supra*) or else it is not clear from the statement of facts in the case what provision the contract

made, if any, in regard to disposition to payments upon purchaser's default (*Weintz v. Hafner, supra; Baston v. Clifford, supra.*) The situation is not clarified by the conflicting decisions in the cases of *Eames v. Der Germania Turn Verein,* 8 Ill. App. 663 and *Beard v. Comstock,* 227 Ill. App. 132. In the former case the contract recited the receipt of $500 as down payment and provided that the vendor might retain as liquidated damages "the money now paid" in the event of purchaser's default. Nevertheless, upon default, purchaser was denied recovery of both of the $500 initial payment and a $2,000 additional payment made subsequent to the execution of the contract. In the latter case the contract similarly provided that the $1,000 down payment should be forfeited as liquidated damages upon purchaser's default, and it was held that the purchaser in default could recover an additional payment made after the execution of the contract. Careful examination of all Illinois cases cited, as well as additional research, fails to disclose any case which can positively be taken as binding precedent in the instant case, as no case can be found wherein it appears that the contract contained no provision whatever as to the rights of the parties upon default by the purchaser. It may be said that in the case of *Ryan v. Shoenberger,* 224 Ill. App. 308, the contract was oral and therefore in all probability contained no provision as to forfeiture of payments, yet the defaulting purchaser was denied recovery for the general reasons heretofore discussed.

It is the opinion of this court, as to plaintiff's first theory, that the tenor of a majority of the Illinois cases on the subject indicates that a defaulting purchaser cannot recover a down payment when he is in default and the vendor is ready and able to comply with the terms of the contract. Accordingly, this court so holds.

As to plaintiff's second theory, that is, prevention or hindrance of one party to a contract of performancy by the opposite party, so far excuses his failure to perform as to allow him to rescind and recover the down payment, the allegations in the amended complaint must be taken as true. These material allegations are: that defendant wrongfully obstructed, impeded, and hindered the plaintiff in his efforts to resell the farm by preventing the plaintiff and the plaintiff's purchasers from access to the farm itself, and that the farm could have readily been sold for the agreed purchase price, to any one of a number of prospective purchasers had the plaintiff been able to take such prospective purchasers on the land. However, there is no allegation in the amended complaint that defendant vendor refused to perform his part of the contract. The converse, therefore, must be accepted as true that he was ready and able to perform. It is also true that the financial circumstances of plaintiff when he entered into the contract on August 23, 1947, were obviously within his own knowledge and the time for performance was but a short time in the future, November 1, 1947. Had he desired the right of visitation, it was his responsibility to see that the contract gave him that right. Not having done so, it must be concluded that he assumed the risk of impossibility of performance on his part.

It is the opinion of this court that the amended complaint did not state a cause of action and was properly stricken. The judgment of the circuit court is affirmed.

*Affirmed.*