NORTHERN ILLINOIS CONSTRUCTION COMPANY *et al.*, Plaintiffs and Counterdefendants-Appellees, v. EDWARD ZALE *et al.*, Defendants-Appellants (Edward Zale *et al.*, Counterplaintiffs-Appellants).

First District (3rd Division)   No. 83—2873

Opinion filed September 25, 1985.

Jack J. Herman, P.C., of Chicago, for appellants Edward Zale, Albert Zale, and Zale Construction Company.

Rudnick & Wolfe, of Chicago (Theodore A. Shapero, Mark L. Shapiro, and Thomas F. Geselbracht, of counsel), for appellees.

JUSTICE McGILLICUDDY delivered the opinion of the court:

Defendants, Edward Zale, Albert Zale and Zale Construction Company (Zale), appeal from an order of the circuit court granting plaintiffs', Northern Illinois Construction Company, Ralph Harwood and Richard Harwood (NICC), motion for summary judgment, enter-

ing judgment for NICC on the complaint, ordering defendants to turn over to plaintiffs $50,000 in earnest money and dismissing defendants' counterclaim for money damages for breach of contract. The parties are land developers in Cook County. On December 14, 1979, they executed an agreement pursuant to which NICC agreed to buy certain vacant real estate in Schaumburg. Defendants did not own the property but had an option to purchase it from Levitt Land, Incorporated (Levitt). Levitt, in turn, had an option to buy the property from the owner, Four Thirty Seven Land Company (437).

The parties' agreement contained a zoning contingency clause which provided that NICC was not obligated to complete the transaction unless the property was rezoned to allow development pursuant to plans already approved by the Schaumburg zoning board of appeals. Paragraph 8(C) of the agreement further provided that should the rezoning ordinance not be adopted by April 30, 1980, the agreement was to terminate and the purchaser was to receive the return of $50,000 earnest money deposited in an escrow account with Chicago Title and Trust Company. By separate letter also dated December 14, 1979, the seller had the option of extending the rezoning deadline to May 31, 1980. The rezoning ordinance was not adopted by May 31, 1980. On June 2, 1980, NICC requested the return of the earnest money and sent defendants the escrow instructions necessary to release the deposit. Defendants did not execute the instructions and the money remains in the account. The Schaumburg zoning board of appeals passed the rezoning ordinance on June 24, 1980. On July 8, 1980, Levitt assigned Zale its option to buy the property from 437, and Zale negotiated directly with 437 to purchase the property through a land trust of which the Zales are the sole beneficiaries.

On January 13, 1981, plaintiffs sought a mandatory injunction requiring the defendants to return the earnest money deposit. In their answer, defendants raised as affirmative defenses NICC's bad faith in delaying and obstructing the rezoning process and, on the same allegations, counterclaimed for the disputed earnest money and for $450,000 in damages for breach of contract. On October 5, 1981, plaintiffs filed a motion for judgment on the pleadings and a motion to dismiss the amended counterclaim. The motions were continued pending discovery because there was a dispute regarding the relationship of the Zales individually to Zale Construction Company. After discovery was taken, plaintiffs moved for summary judgment.

On November 16, 1983, the circuit court granted plaintiffs' motion for summary judgment and ordered defendants to return the earnest money and all earnings thereon to NICC. The court entered judgment

in favor of plaintiffs on defendants' counterclaim for the earnest money and dismissed defendants' breach of contract action.

The dispute in this case is centered on paragraph 15 of the parties' agreement. Paragraph 15 in pertinent part provides:

"15. Limitations on Remedies

A. If Purchaser shall fail to discharge any of its obligations under this Agreement which failure is not cured within ten (10) days after the date on which Seller gives Purchaser written notice thereof, then Seller may elect to terminate all rights of Purchaser under this Agreement and pursue any remedies provided by law or in equity. The foregoing to the contrary notwithstanding Purchaser's liability under this Paragraph 15A for default by Purchaser occurring prior to Seller's acquisition of title to Newporte I, shall be limited as follows:

(i) If Seller does not acquire title to Newporte I pursuant to the Levitt Contract, Purchaser's liability shall be limited to Three Hundred Fifty Thousand Dollars ($350,000.00) plus payment of the Reimbursement Funds;

(ii) If Seller acquires title to Newporte I.pursuant to the Levitt Contract despite Purchaser's default, Purchaser shall have no liability whatsoever hereunder and, concurrent with Seller's election to terminate Purchaser's rights under this Agreement, the Earnest Money shall be returned to Purchaser; ***."

The circuit court found that paragraph 15(A)(ii) barred defendants' counterclaim for money damages and further found that there was nothing in the agreement that entitled defendants to the disputed earnest money.

■ Defendants' first argument on appeal is that the circuit court erred in granting plaintiffs' motion for summary judgment because there remained a genuine issue of material fact regarding the applicability of the limitations of remedies clause in paragraph 15 to the facts in this case. We note first that defendants mischaracterize the question of applicability of the contractual language as a question of fact. Questions of contractual validity or interpretation are matters of law for the court to decide; questions of language or contractual formation are for the jury. (*Bates v. Select Lake City Theater Operating Co.* (1979), 78 Ill. App. 3d 153, 397 N.E.2d 75.) The meaning and construction of a written instrument is a question of law for the court where there is no ambiguity created by the language used, or where some disputed extrinsic facts, such as the particular meaning attached to the words by the parties, create an ambiguity in the meaning of

the instrument. (*Fields v. Franklin Life Insurance Co.* (1983), 115 Ill. App. 3d 954, 451 N.E.2d 930.) Summary judgment was therefore appropriate in this case.

■ Defendants next suggest several constructions of paragraph 15 in support of their contention that it is inapplicable and thus ineffective to limit their remedies for plaintiffs' default. It is well established that the construction given an agreement by the trial court will not be set aside unless it is contrary to the manifest weight of the evidence. (*Spircoff v. Spircoff* (1979), 74 Ill. App. 3d 119, 392 N.E.2d 363.) The trial court found that Zale acquired the property pursuant to the Levitt contract after plaintiffs' default and triggered the application of paragraph 15(A)(ii). The court noted the harshness of the effect of paragraph 15(A)(ii) and stated that it led to a presumption that the sellers were aware of that result. The court further noted that the justification for its inclusion seemed to be the presence of the multiple options involved in the transaction. Defendants urged in the trial court, and continue to argue, that the Zale-Levitt agreement of May 10, 1979, is distinguishable from the Zale-Levitt-437 agreement of July 8, 1980. The trial court found, however, that the two agreements were in substance the same. In making that determination, the court had before it both agreements and the discovery deposition of Edward Zale in which he admitted that the two agreements were essentially the same transaction. Our review of the record establishes that the court's finding was amply supported by the evidence. Since the defendants acquired the property in such a way as to trigger the limitations of remedies clause, count three of the amended counterclaim for damages for breach of contract was properly dismissed. The trial court's construction of paragraph 15 is determinative; we therefore find it unnecessary to address defendants' other attempts to reconstrue various aspects of the limitations of remedies clause.

■ Defendants also appeal the entry of judgment against them on their counterclaim for the earnest money and the order of the circuit court requiring them to return the earnest money and the earnings thereon to the plaintiffs. In support of their position, defendants argue that in Illinois a provision for earnest money will, in the absence of any express provision to the contrary, be enforced as a provision for liquidated damages. (*Bamberg v. Griffin* (1979), 76 Ill. App. 3d 138, 394 N.E.2d 910; *Pruett v. La Salceda, Inc.* (1977), 45 Ill. App. 3d 243, 359 N.E.2d 776; *Linster v. Regan* (1969), 108 Ill. App. 2d 459, 248 N.E.2d 751.) The trial court in the instant case, however, found that the contract "constantly" called for the return of the earnest money to purchaser based on the occurrence of certain events, and

that there was nothing in the parties' agreement providing for a forfeiture of the $50,000 deposit. We agree. As noted above, paragraph 8(C) specifically allocated the earnest money to the purchaser should the rezoning ordinance not be passed by the agreed upon date. The cases cited by defendants in support of their position are inapplicable because the agreement in this case contained an express provision regarding the disposition of the earnest money. We find nothing else in the agreement that justifies a forfeiture in favor of the defendants. Judgment was thus properly entered in favor of the plaintiffs on this count.

For the foregoing reasons, the judgment order of the circuit court of Cook County is affirmed.

Affirmed.

WHITE, P.J., and RIZZI, J., concur.